**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**TERESA RUDD, Individually and as Administratrix**
**of the Estate of CHAVIS CHACOBIE CARTER, deceased**                    **PLAINTIFF**

**v.**                              **Case No. 3:13-cv-00173 KGB**

**THE CITY OF JONESBORO,** *et al.*                              **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

On July 28, 2012, Chavis Chacobie Carter tragically committed suicide in the back seat of a police car in Jonesboro, Arkansas.  Mr. Carter's mother, Teresa Rudd, individually and as the administratrix of Mr. Carter's estate, brings this action against four defendants:  the City of Jonesboro; Ronald Marsh, individually and in his official capacity as a police officer with the City of Jonesboro; Keith Baggett, individually and in his official capacity as a police officer with the City of Jonesboro; and Michael Yates, individually and in his official capacity as Chief of Police for the City of Jonesboro.  In her complaint, Ms. Rudd alleges six types of claims against the defendants:  (1) various violations of Mr. Carter's rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution against Officers Baggett and Marsh; (2) municipal liability for failure to train against Chief Yates and the City of Jonesboro; (3) various violations of Mr. Carter's civil rights under Arkansas law including his rights under Article II of the Arkansas Constitution and the Arkansas Civil Rights Act, codified at Ark. Code Ann. § 16-123-101, *et seq.*, to be free from unreasonable search and seizure, cruel and unusual punishment, excessive force, and to be afforded due process of law; (4) negligence; (5) negligent hiring, supervision, and retention; and (6) wrongful death.

Before the Court is defendants' motion for summary judgement (Dkt. No. 42).  Ms. Rudd has responded to defendants' motion, and the defendants have replied to Ms. Rudd's response

(Dkt. Nos. 46; 47).  In her response to defendants' motion, Ms. Rudd concedes that defendants are entitled to summary judgment on "Counts 3, 4, 5, and 6 of the Complaint" (Dkt. No. 46-2, at 5).  Count 3 alleges violations of Mr. Carter's civil rights under Arkansas law.  Counts 4 and 5 allege negligence and negligent hiring, supervision, and retention, respectively.  Count 6 alleges wrongful death.  Ms. Rudd also "does not contest Chief Yates' immunity in his individual capacity" and "does not allege that any written municipal policy was *per se* unconstitutional on its face in the 'pure' sense, as contemplated in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)" (*Id.*).  Ms. Rudd objects to summary judgment "with respect to the individual liability of Defendants Baggett and Marsh as well as the City's municipal liability for failure to train" (*Id.*). Therefore, the Court will limit its analysis to the claims to which Ms. Rudd responds, not those she concedes.

For the following reasons, the Court grants defendants' motion for summary judgment (Dkt. No. 42).  Ms. Rudd's claims are dismissed with prejudice, with the exception of her Fourth Amendment claim.  The Court directs the parties to notify the Court within seven days of the entry of this Order as to whether any Fourth Amendment claims remain pending in this action.

## I.     Background

The following facts are taken from Ms. Rudd's response in opposition to defendants' statement of undisputed material facts, unless otherwise indicated (Dkt. No. 46-1).  On July 28, 2012, Officer Baggett was dispatched to Haltom Street in Jonesboro, Arkansas, after a citizen reported that a white truck was suspiciously driving up and down the street with its lights off.  Upon arriving at Haltom Street, Officer Baggett saw a white truck parked with only its parking lights on.  Officer Baggett turned on his police cruiser's blue lights and made contact with the occupants of the truck (Dkt. No. 43-1, ¶ 6).

Two Caucasian males and an African American male were seated in the front seat of the truck. Officer Baggett asked them to identify themselves. The driver produced a driver's license identifying him as Sean Hembry. The other two occupants did not have identification, so they provided names and dates of birth. The man seated in the middle stated that his name was Timothy Teal and that he was born on July 19, 1993. The other passenger said that his name was Laryan Bowman and that he was born on April 4, 1991. Officer Baggett ran this information through dispatch and only got a return on Mr. Hembry. Officer Baggett then requested a second officer to assist him, and Officer Marsh radioed that he would respond to Officer Baggett's location (Dkt. No. 43-1, ¶ 11). Officer Baggett got more information from Mr. Teal and Mr. Bowman and was able to get a return on Mr. Teal from dispatch, but not on Mr. Bowman. Officer Marsh arrived at the scene, and Officer Baggett had him take Mr. Bowman from the truck to his squad car.

Officer Marsh asked Mr. Bowman about his name and whether he had any drugs on him. At this point, Mr. Bowman identified himself as Chavis Chacobie Carter and "handed Officer Marsh a small bag of what appeared to be marijuana, which he had in his front shirt pocket" (Dkt. No. 46-1, ¶ 9).[1] Officer Marsh checked Mr. Carter's shorts pockets, then grabbed hold of his pants and shook them up and down.[2] He then placed Mr. Carter in the back of his police car. Mr. Carter was not handcuffed and was allowed to keep his cell phone. At some point, when

---

[1] Ms. Rudd does not dispute this fact, but she notes that there are contradictory accounts as to how Officer Marsh discovered the bag of what appeared to be marijuana on Mr. Carter (Dkt. No. 43-1, at 4). These discrepancies do not need to be resolved by this Court to resolve the pending motion, as they are not material to the issues presented in the defendants' motion for summary judgment.

[2] Defendants assert that Officer Marsh patted down Mr. Carter at this time, but this fact is disputed by Ms. Rudd (Dkt. No. 46-1, ¶ 7). For reasons that will be addressed later in this Opinion and Order, this dispute is not material for the purposes of this Court's ruling on the pending motion for summary judgment.

Officer Marsh returned to his car to check Mr. Carter's identification, he took the cell phone from Mr. Carter.

After Mr. Carter was placed in the police car, a data base search of his real name revealed that there was an active warrant out of the state of Mississippi for his arrest. Officer Baggett also found a set of scales under the passenger seat of the truck where Mr. Carter had been seated. Officer Marsh removed Mr. Carter from the back of his police car, searched him, and placed him under arrest for the outstanding Mississippi warrant. Officer Marsh cuffed Mr. Carter's hands behind his back and returned him to the back seat of his police car, where Mr. Carter had previously been. Officers Baggett and Marsh were a short distance away from Officer Marsh's car when they heard a sound, but they were not sure of its origin. Within two minutes, the officers returned to their cars. When Officer Marsh got in his car, he smelled gun powder. He turned around and saw that Mr. Carter had shot himself in the head with a Cobra .380 pistol.[3] Mr. Carter was still alive, and the officers radioed for emergency medical services. Mr. Carter ultimately died from the gunshot wound. Dr. Stephen A. Erickson, Deputy Chief Medical Examiner at the Arkansas State Crime Laboratory and Pathologist of Record, declared that Mr. Carter committed suicide.

An internal affairs investigation was convened to investigate Mr. Carter's death. The report concluded that Officer Marsh's initial search of Mr. Carter was improper, as the search "is

---

[3] In her response in opposition to defendants' statement of undisputed material facts, Ms. Rudd raises the peculiar nature of Mr. Carter's death. For example, she notes that "[i]t is unclear how the handgun ended up on Carter's left side, when he is alleged to have shot himself in the right temple with the bullet traveling at a 'slightly backward and downward' angle . . . all while his hands were handcuffed behind his back" (Dkt. No. 46-1, at 6). However, she does not dispute that Mr. Carter committed suicide (Dkt. No. 46-1, at 3, ¶ 1; 6, ¶ 16) (not disputing that "[t]his case arises out of a suicide committed by [Mr. Carter] as he was detained and cuffed in the backseat of a Jonesboro, Arkansas, police car on July 28, 2012" and that "[i]t was at that moment that Officer Marsh smelled gun powder, turned and saw that Carter had shot himself in the head in the backseat.").

visible on [Officer] Baggett's video and it did not appear to include him actually touching Mr. Carter's body at all except to touch the back of his arm as he is walking him back to his unit" (Dkt. No. 46-1, ¶ 25).  The report also noted that a "search of the backseat would have been warranted and preferable, but that was not done" (*Id.*).  According to the report, Officer Marsh searched the back seat of his police unit earlier in his shift, and no one had been in the unit after his previous search.  Based on that information, the report concluded that it was "very likely that the weapon Mr. Carter used to shoot himself . . . was concealed in the unit while he was seated in the unit without being handcuffed and then retrieved by him after the second, more thorough search" (*Id.*).  Ms. Rudd does not offer an alternate theory on how Mr. Carter came to possess the gun in the back of Officer Marsh's police vehicle, and she does not dispute that Mr. Carter ended his own life.

## II.     Standard of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact in dispute and that the defendant is entitled to entry of judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party.  *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008).  "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."  *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).  However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings.  *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984).  The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  The burden then

shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008).   "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### III.   Discussion

Ms. Rudd does not contest defendants' motion for summary judgment on many of her claims.  Based on her response, only two contested claims remain in this case:  (1) claims against Officers Baggett and Marsh for alleged violations of the United States Constitution; and (2) claims against the City of Jonesboro and Chief Yates in his official capacity for failing to train police officers.

### A.      Constitutional Claims Against Officers Baggett And Marsh

Ms. Rudd claims that Officers Baggett and Marsh violated Mr. Carter's "Fourth Amendment right to be free from unreasonable search and seizure, his Eighth Amendment right to be free from cruel and unusual punishment, and his Fifth and Fourteenth Amendment rights to due process" (Dkt. No. 1, ¶ 47).   She also alleges that Officer Marsh violated Mr. Carter's *Miranda* rights (*Id.*, ¶ 44).   Defendants, in their motion for summary judgment, and Ms. Rudd, in her response, neglect to address Ms. Rudd's claims under *Miranda* and the Fourth and Fifth Amendments.

### 1.      *Miranda* And The Fourth And Fifth Amendments

On its own motion, the Court dismisses Ms. Rudd's claims under *Miranda* and the Fifth Amendment.   "The reading of *Miranda* warnings is a procedural safeguard rather than a right arising out of the fifth amendment itself[,]" meaning "the remedy for a *Miranda* violation is the exclusion from evidence of any compelled self-incrimination, not a section 1983 action."

*Warren v. City of Lincoln, Neb.*, 864 F.2d 1436, 1442 (8th Cir. 1989) (en banc).  Therefore, even if Officer Marsh violated the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), by failing to inform Mr. Carter of his rights, Ms. Rudd cannot recover money damages for such a violation.  Ms. Rudd's Fifth Amendment claims also fail because "[t]he due process clause of the Fifth Amendment applies only to the federal government."  *Truong v. Hassan*, No. 15-2052, 2016 WL 3769456, at *2 n.4 (8th Cir. July 14, 2016).  As Officers Baggett and Marsh are agents of Jonesboro, Arkansas, not agents of the federal government, Ms. Rudd's Fifth Amendment claims against them must be dismissed.

The Court makes no ruling as to any Fourth Amendment claims Ms. Rudd may have against Officers Baggett and Marsh.  The parties are directed to file notice with the Court within seven days of the entry of this Order as to whether any Fourth Amendment claims remain pending in this action.

### 2.     Eighth And Fourteenth Amendment Claims

Ms. Rudd asserts that Officers Baggett and Marsh were deliberately indifferent to Mr. Carter's right to be free from cruel and unusual punishment under the Eighth Amendment as well as his right to due process under the Fourteenth Amendment (Dkt. No. 1, ¶¶ 47, 49).  The Court notes that, because Mr. Carter was a pretrial detainee when the underlying events occurred, Ms. Rudd's claims against Officers Baggett and Marsh are "not analyzed under the Eighth Amendment, but instead under the Fourteenth Amendment's Due Process Clause."  *Kahle v. Leonard*, 477 F.3d 544, 550 (8th Cir. 2007).  This fact makes little practical difference, as "[p]retrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment."  *Id.*

The parties agree that the factual basis of Ms. Rudd's constitutional claim is that Officers Baggett and Marsh were allegedly deliberately indifferent to Mr. Carter's constitutional rights by not performing a proper search of his person because Ms. Rudd contends that, if they had, they would have discovered the gun Mr. Carter used to end his life.  The parties disagree as to how the Court should characterize this claim.  Officers Baggett and Marsh contend that Ms. Carter's claim should be treated as a failure to provide adequate medical treatment (Dkt. No. 43, at 12−14).  Ms. Rudd argues that Officers Baggett and Marsh "cast[] [her] claims through a much too narrow lens" as her constitutional claims "are more appropriately framed as failure to protect rather than denial of medical care" (Dkt. No. 46-2, at 5−6).  Because the parties disagree as to how this claim should be characterized, the Court will address both theories that are advanced.

Regardless of how the claim is characterized, Officers Baggett and Marsh claim that they are entitled to qualified immunity.  The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)) (internal quotation marks omitted).  To determine if qualified immunity applies, the Court must conduct a two-prong inquiry by examining:  "(1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right and (2) whether the constitutional right violated was clearly established at the time of defendant's alleged misconduct."  *Id.* (alteration in original) (internal quotation marks omitted).  "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity."  *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

### a.      Failure To Provide Adequate Medical Treatment

Claims arising out of a prisoner or pretrial detainee's suicide are generally treated as claims for failure to provide adequate medical treatment. *Hott v. Hennepin Cty., Minnesota*, 260 F.3d 901, 905 (8th Cir. 2001).  As a pretrial detainee, Mr. Carter had a clearly established right under the Fourteenth Amendment "to be protected from the known risks of suicide and to have his serious medical needs attended to." *Luckert v. Dodge Cty.*, 684 F.3d 808, 817 (8th Cir. 2012).  Officers Baggett and Marsh are not entitled to qualified immunity "if they are shown to have acted with 'deliberate indifference to the risk of [Mr. Carter's] suicide.'" *Lambert v. City of Dumas*, 187 F.3d 931, 936 (8th Cir. 1999) (quoting *Rellergert v. Cape Girardeau County,* 924 F.2d 794, 796 (8th Cir.1991)).  To show that the officers acted with deliberate indifference, Ms. Rudd must demonstrate that they "actually knew that [Mr. Carter] faced a substantial risk of serious harm and failed to respond reasonably to abate that risk." *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006).  "It is not enough to show the risk was obvious.  A prison official is not liable under the Fourteenth Amendment unless the official knows of facts evidencing a substantial suicide risk *and* the official actually infers the prisoner presents a substantial suicide risk." *Coleman v. Parkman*, 349 F.3d 534, 538 (8th Cir. 2003) (emphasis in original).  This analysis "focuses on the particular risk of suicide posed by [Mr. Carter], rather than on the generalized threat of suicide among the population of [detainees] as a whole." *Hott*, 260 F.3d at 905.  The deliberate indifference standard "is met only if there were a strong likelihood, rather than a mere possibility, that self-infliction of harm would result." *Lambert*, 187 F.3d at 937 (quoting *Bell v. Stigers,* 937 F.2d 1340, 1343 (8th Cir.1991)).  "'A showing that a [law enforcement officer] was negligent in failing to recognize a [detainee's] suicidal tendencies is insufficient to satisfy this standard.'" *Id.* (quoting *Bell,* 937 F.2d at 1343).

In this case, based on the record evidence before it and drawing all reasonable inferences from that record evidence in favor of Ms. Rudd, the Court finds that Officers Baggett and Marsh were not deliberately indifferent to Mr. Carter's medical needs because there is no evidence in the record to establish that they had any knowledge that Mr. Carter posed a serious risk of harm to himself. *Hott*, 260 F.3d at 906 ("In short, there is no evidence to indicate that the ADC or its employees had actual knowledge that Hott posed a serious risk of harm to himself.  In the absence of such evidence, the plaintiff cannot show that ADC personnel were subjectively deliberately indifferent to his need for medical care.").  In her response to defendants' motion for summary judgment, Ms. Rudd does not attempt to argue that Officers Baggett or Marsh had any such knowledge.  The Court also notes there are no facts in the record demonstrating that Mr. Carter even exhibited suicidal tendencies. *See Bahner v. Carmack*, 107 F.3d 875 (8th Cir. 1997) (finding that "plaintiffs did not produce sufficient evidence that any defendant was deliberately indifferent" where the plaintiff "did not display any outward manifestations of being suicidal").

According to the internal affairs report prepared in response to the incident:

> The portions of his conversation and speech on the [dashcam] video confirm that Chavis Carter gave little indication during his contact that he was distraught to the point of harming himself.  He was not overly emotional or belligerent and seemed relatively calm and respectful during his contact with the officers. . . .  During their contact, Mr. Carter gave absolutely no indication that he had any intention of perhaps causing harm to himself or anyone else, so the officers would not have had any reason to believe that they should be actively seeking psychological assistance for him.

(Dkt. No. 43-4, at 5).  Emanuel Kapelsohn, whom Ms. Rudd has designated as an expert witness on her behalf and who viewed the video and audio recordings of the incident, acknowledged and did not dispute the conclusion reached by the internal affairs investigation (Dkt. No. 43-10, at 1, 12).  Therefore, the Court finds that Officers Baggett and Marsh are entitled to qualified

immunity from any claim alleging a failure to provide adequate medical treatment, to the extent that Ms. Rudd brings such a claim.

### b.        Failure To Protect

Ms. Rudd contends that her claims against Officers Baggett and Marsh are more appropriately characterized as failure to protect claims. "In addition to requiring that prisoners' specific medical problems be treated, the Eighth Amendment also imposes upon jailors an obligation to protect inmates from more generalized harms such as assault by other inmates." *Hott*, 260 F.3d at 906. As "[t]he Fourteenth Amendment guarantees pre-trial detainees at least as many protections as does the Eighth Amendment," Officers Baggett and Marsh were obligated to extend at least the same level of protection to Mr. Carter under the Fourteenth Amendment as that required under the Eighth Amendment. *Id.* at 905. To recover on her failure to protect claims, Ms. Rudd must establish two things. First, she "must prove [that Mr. Carter] was '[detained] under conditions posing a substantial risk of serious harm.'" *Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). "This is an objective requirement to ensure the deprivation is a violation of a constitutional right." *Id.* (citing *Jensen v. Clarke,* 94 F.3d 1191, 1197 (8th Cir.1996)). Next, she "must establish [that Officers Baggett and Marsh] were deliberately indifferent to [Mr. Carter's] health or safety." *Id.* (citing *Farmer,* 511 U.S. at 834). The second requirement is subjective, meaning Ms. Rudd must prove that Officers Baggett and Marsh "both knew of and disregarded 'an excessive risk to [Mr. Carter's] health or safety.'" *Id.* (quoting *Farmer,* 511 U.S. at 837). "[T]he doctrine of qualified immunity requires an *individualized* analysis of *each* officer's alleged conduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (quoting *Walton v. Dawson*, 752 F.3d 1109, 1125 (8th Cir. 2014)) (emphasis in original).

The Court is aware of only one case in which the Eighth Circuit Court of Appeals characterized a claim arising out of a detainee's suicide as a failure to protect claim. In *Hott v. Hennepin Cty., Minnesota*, Joyce Hott brought "suit for damages stemming from the suicide of her son during his pre-trial detention at the Hennepin County Adult Detention Center (ADC)." *Hott*, 260 F.3d at 903. The Eighth Circuit found that Ms. Hott's claim alleging failure to provide adequate medical care failed for lack of evidence that any defendant had actual knowledge that her son posed a serious risk of harm to himself. *Id.* at 905. That finding did not end the court's analysis because, unlike a failure to provide adequate medical care claim, "for the purposes of failure to protect claims, 'it does not matter . . . whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.'" *Id.* at 906 (quoting *Doe By & Through Doe v. Washington Cty.*, 150 F.3d 920, 923 (8th Cir. 1998)). Accordingly, the Eighth Circuit concluded that it also needed to consider "whether the plaintiff has produced evidence sufficient to allow her to proceed on the theory that [the defendant's] conduct amounted to deliberate indifference to the safety of the inmates in the special needs cell block in general, including the risk of suicide." *Id.*

Ms. Hott contended that one of the defendant's "failure to conduct cell checks approximately every half hour constituted deliberate indifference to [her son's] safety." *Id.* In support of her failure to protect claim, she "submitted the statement of an expert on jail policies[,]" to which the Arkansas Department of Correction ("ADC") responded by submitting "copies of the ADC's training materials, which indicate[d] that prisoner suicide is a pervasive problem, that prisoners are at a greater risk of suicide than is the general population, and that ADC employees are advised of the risk of inmate suicide." *Id.* at 906−07. The Eighth Circuit found that, given these facts, "a jury could reasonably draw an inference that [the defendant] was

aware that among the purposes of the health and well-being checks were the goals of preventing, interrupting, or rescuing inmates from suicide attempts." *Id.* at 907.  Based on that finding, the court noted that granting summary judgment on Ms. Hott's failure to protect claim would have been inappropriate "*if that inference would be sufficient* to support a conclusion that [the defendant] was deliberately indifferent to a *substantial* risk to the safety of the inmates in the special needs section of the ADC." *Id.* (emphasis added).

However, the Eighth Circuit found that the defendant's awareness that one of the purposes of conducting frequent cell checks was to prevent prisoner suicide attempts was not enough to establish that the defendant's failure to follow the ADC's cell check policy demonstrated deliberate indifference to a substantial risk to the safety of the inmates in the special needs section of the ADC.  In reaching that conclusion, the court focused on a central question:  "whether the general risk of suicide among inmates who are not known to be predisposed to suicide is substantial." *Id.*  In support of her argument that it was, Ms. Hott pointed to three pieces of evidence:  (1) language from a concurring opinion in a prisoner suicide case;[4] (2) "her expert's opinion that inmates are at a 'high risk' of suicide[;]" and (3) "ADC training materials, which state that '[i]nmate suicide is one of the most serious problems facing correctional facilities.'" *Id.*  The Eighth Circuit found that this evidence was "insufficient to support an inference that suicide amounts to such a substantial risk to general inmate safety that [the defendant's] failure to conduct checks according to ADC policy amounted to deliberate

---

[4]  The language to which she referred:  "Jailers and municipalities beware!  Suicide is a real threat in the custodial environment. Showing some concern for those in custody, by taking limited steps to protect them, will not pass muster unless the strides taken to deal with the risk are calculated to work: Employing only meager measures that jailers and municipalities know or should know to be ineffectual amounts to deliberate indifference."  *Hott*, 260 F. 3d at 907 (quoting *Rhyne v. Henderson County,* 973 F.2d 386, 396 (5th Cir.1992) (Goldberg, J., concurring; internal quotations omitted)).

13

indifference to [Ms. Hott's son's] needs." *Id.* at 907−08.  Accordingly, the Eighth Circuit affirmed the district court's grant of summary judgment on Ms. Hott's failure to protect claim.

The case before the Court bears striking similarities to *Hott*.  Like in *Hott*, Ms. Rudd points to evidence indicating that the Jonesboro Police Department recognizes that "failing to properly search suspects places not only the arresting officer and other assisting officers at risk, *but the suspect themselves*" as well (Dkt. No. 46-2, at 7; Dkt. No. 43-10, at 13−14) (emphasis in original).  This evidence could potentially support an inference that Officers Baggett and Marsh were aware that, among other purposes, adequate searches of suspects are intended to prevent police suspects from harming themselves.  However, as the Eighth Circuit clearly instructs, this inference is not enough to establish deliberate indifference necessary to maintain a failure to protect claim.  Ms. Rudd still has the burden of showing that the general risk of suicide among police suspects who are not known to be predisposed to suicide is substantial.  Ms. Rudd offers no evidence to this point, and the Court finds none upon its examination of the record evidence submitted by the parties.  Therefore, in the light of the Eighth Circuit's decision in *Hott*, this Court must find that the record evidence, even with all reasonable inferences drawn in favor of Ms. Rudd, does not support a finding that Officers Baggett and Marsh's conduct violated Mr. Carter's constitutional rights.  Accordingly, Officers Baggett and Marsh are entitled to qualified immunity on Ms. Carter's failure to protect claims.

### B.      Municipal Liability For Failure To Train

Ms. Rudd also brings a 42 U.S.C. § 1983 claim against the City of Jonesboro and Chief Yates in his official capacity for "constitutional violations resulting from [their] failure to train" Officers Baggett and Marsh (Dkt. No. 46-2, at 8).  Because this Court concludes that Officers Baggett and Marsh did not violate Mr. Carter's constitutional rights under the Fifth, Eighth, or

14

Fourteenth Amendments, the Court must find that the City of Jonesboro and Chief Yates are not liable for failure to train based on these claims. *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012) ("In his final claim, Carpenter contends that Sheriff Ferguson and Benton County are liable under § 1983 for failing to train deputy sheriffs adequately about how to recognize and respond to symptoms of strokes. Without a showing that the deputies violated the Constitution, however, there can be no liability for failure to train. *City of L.A. v. Heller,* 475 U.S. 796, 799 (1986) (per curiam). The district court thus correctly dismissed the claim against the sheriff and the county."). Accordingly, defendants are entitled to summary judgment on Ms. Rudd's failure to train claims to the extent those claims derive from alleged violations of the Fifth, Eighth, or Fourteenth Amendments. To the extent that Ms. Rudd's Fourth Amendment claims against Officers Baggett and Marsh remain pending, her failure to train claims that arise out of any alleged Fourth Amendment violations remain pending as well.

**IV.     Conclusion**

Defendants did not address Ms. Rudd's Fourth Amendment claims in their motion for summary judgment, and Ms. Rudd did not raise those claims in her response.  The parties are directed to notify the Court within seven days of the entry of this Order as to whether any Fourth Amendment claims remain pending in this action.  In regard to Ms. Rudd's other claims, the Court finds that Officer Baggett, Officer Marsh, Chief Yates, and the City of Jonesboro are entitled to summary judgment.  With the exception of any remaining Fourth Amendment claim or failure to train claim derived from a Fourth Amendment violation, Ms. Rudd's claims against these defendants are dismissed with prejudice.

So ordered this 9th day of September, 2016.

_Kristine G. Baker_

Kristine G. Baker
United States District Judge