IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**TERESA RUDD, Individually and as Administratrix**
**of the Estate of CHAVIS CHACOBIE CARTER, deceased**          **PLAINTIFF**

v.                    Case No. 3:13-cv-00173 KGB

**THE CITY OF JONESBORO,** *et al***.**                    **DEFENDANTS**

**OPINION AND ORDER**

On September 9, 2016, the Court entered an Opinion and Order granting defendants Ronald Marsh, Keith Baggett, Michael Yates, and the City of Jonesboro's motion for summary judgment and dismissing most of plaintiff Teresa Rudd's claims (Dkt. No. 50). The Court did not dismiss Ms. Rudd's claims under the Fourth Amendment, as they were not explicitly addressed by the defendants' motion for summary judgment or Ms. Rudd's response, though the defendants did assert that they were entitled to qualified immunity (Dkt. No. 43, at 11). The parties have submitted supplemental briefing on Ms. Rudd's remaining claims (Dkt. Nos. 54; 55). For the following reasons, the Court grants judgment in favor of defendants on these remaining claims.

**I.     Background**

A comprehensive recitation of the factual background of this case is provided in the Court's earlier Opinion and Order (Dkt. No. 50, at 2-5). For the purposes of Ms. Rudd's remaining claims, these are the relevant alleged facts. These facts are taken from Ms. Rudd's response in opposition to defendants' statement of undisputed material facts, unless otherwise indicated (Dkt. No. 46-1).

On July 28, 2012, the Jonesboro Police Department received a report that a white truck was suspiciously driving up and down Haltom Street in Jonesboro, Arkansas, with its lights off. Officer Keith Baggett was dispatched to investigate the report. When he arrived at Haltom Street, he saw a white truck parked with only its parking lights on. Officer Baggett turned on his police cruiser's

blue lights and made contact with the occupants of the truck: two Caucasian males and an African American male (Dkt. No. 43-1, ¶ 6).

Officer Baggett asked the truck's occupants to identify themselves. The driver produced a driver's license, but the other two occupants did not have identification. Instead, they told Officer Baggett their names, Timothy Teal and Laryan Bowman, and dates of birth. Officer Baggett ran this information through dispatch and only got a return on the driver. At that point, Officer Baggett requested assistance, and Officer Ronald Marsh radioed that he would respond to Officer Baggett's location (Dkt. No. 43-1, ¶ 11). Officer Baggett returned to the white truck and asked Mr. Teal and Mr. Bowman for additional information about their identities. Based on that information, Officer Baggett was able to get a return through dispatch on Mr. Teal but not on Mr. Bowman. Officer Marsh arrived at the scene, and Officer Baggett had him take Mr. Bowman from the truck to his squad car.

Officer Marsh checked Mr. Bowman's short pockets and shook his shorts. He also asked Mr. Bowman about his name and whether he had any drugs on him. Mr. Bowman admitted that his real name was Chavis Chacobie Carter, and he "handed Officer Marsh a small bag of what appeared to be marijuana, which he had in his front shirt pocket" (Dkt. No. 46-1, ¶ 9).[1] Officer Marsh placed Mr. Carter in the back seat of his police cruiser.

A police database search revealed that there was an outstanding warrant for Mr. Carter's arrest out of Mississippi. Officer Baggett also searched the truck that Mr. Carter had been sitting in and discovered a set of scales under the passenger seat where Mr. Carter had been seated. The

---

[1] Ms. Rudd does not dispute this fact in her response to the defendants' motion for summary judgment, but she notes that Officer Baggett and an Internal Affairs Investigative Report indicate that Officer Marsh claimed at the time that he found the marijuana in Mr. Carter's pocket (Dkt. No. 46-1, at 4).

officers removed Mr. Carter from the police cruiser, searched him incident to an impending arrest, and placed him under arrest for the warrant out of Mississippi. The officers handcuffed Mr. Carter's hands behind his back and placed him back into Officer Marsh's police cruiser. Mr. Carter committed suicide by shooting himself in the head while his hands were handcuffed behind his back in the backseat of Officer Marsh's vehicle.

## II. Standard of Review

Summary judgment is proper if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the defendant is entitled to entry of judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under the prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

Parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The burden then shifts to the nonmoving party to establish that there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, one of the "principal purposes" of Federal Rule of Civil Procedure 56, the rule pertaining to summary judgment, "'is to isolate and dispose of factually unsupported claims or defenses . . . .'" *Amerinet,*

*Inc. v. Xerox Corp.*, 972 F.2d 1483, 1490 (8th Cir. 1992) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)).  Therefore, while any inferences drawn from the underlying facts must be construed in the light most favorable to the party opposing summary judgment, "'the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial.'" *Id.* (quoting *Celotex,* 477 U.S. at 322).

### III. Discussion

In Count 1 of Ms. Rudd's complaint, she claims that Officers Baggett and Marsh, "through their unlawful and unethical conduct, deprived [Mr. Carter] of clearly established rights and privileges as guaranteed under the United States Constitution, in violation of 42 U.S.C. § 1983" (Dkt. No. 1, ¶ 38).  She also asserts that "[t]he acts of Defendant Baggett and Defendant Marsh, along with the acts of Defendant City of Jonesboro, Arkansas' employees of the Jonesboro Police Department, were a part of a pattern of conduct at the Jonesboro Police Department" (*Id.*, ¶ 39). In Count 2 of Ms. Rudd's complaint, she claims that Sheriff Yates and the City of Jonesboro, Arkansas, "failed to properly train the officers of the Jonesboro Police department, including Defendants Baggett and Marsh, regarding proper search and seizures" (*Id.*, ¶ 53).

"The Fourth Amendment prohibits unreasonable searches and seizures." *United States v. Kimhong Thi Le*, 474 F.3d 511, 514 (8th Cir. 2007).  In her complaint, Ms. Rudd claims that Officers Baggett and Marsh violated Mr. Carter's Fourth Amendment rights by:  (1) detaining Mr. Carter without probable cause or any other justification; (2) searching Mr. Carter without probable cause or any other justification; (3) improperly ordering Mr. Carter to exit a vehicle without legal justification; and (4) improperly searching Mr. Carter without his consent, and doing so in a

negligent manner (*Id.*, ¶¶ 40-43).  The Court requested additional briefing from the parties regarding Ms. Rudd's Fourth Amendment claims because these allegations were not explicitly addressed in the defendants' motion for summary judgment or in Ms. Rudd's response.

After reviewing the additional briefing, the Court determines that Ms. Rudd's Fourth Amendment claims, and the failure to train claims arising out of her Fourth Amendment claims, must be dismissed.  Defendants' initial position is that, given the facts of this case, Ms. Rudd's claims are not analyzed under the Fourth Amendment but instead that in-custody suicides of pretrial detainees are examined under the Fifth and Fourteenth Amendments (Dkt. No. 52, at 2). In her additional briefing, Ms. Rudd makes clear that her Fourth Amendment claims are based on her argument that Officers Baggett and Marsh conducted a "negligent search" that failed to result in the discovery of the gun that Mr. Carter eventually used to end his life.  She focuses exclusively on the manner in which the search was conducted and the events occurring in the aftermath of Mr. Carter's suicide.  She does not address the constitutionality of the initial detention and questioning of Mr. Carter by Officer Baggett.  She provides no analysis regarding the legal justification for searching Mr. Carter's pockets.  Even if she did, the Court would find that no Fourth Amendment violation occurred on the undisputed record facts here, *see United States v. Wheat*, 278 F.3d 722 (8th Cir. 2001) (determining that an anonymous tip sufficed to give rise to the reasonable suspicion required under the Fourth Amendment to support a police officer's stopping and detaining a car allegedly being driven erratically, even though the officer did not personally observe the erratic driving), or, in the alternative, that the defendants are entitled to qualified immunity as to any such claim based on these events that occurred in 2012, *see Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015) (finding that two police officers were entitled to qualified immunity on plaintiff's Forth Amendment claims where the officers conducted an investigative *Terry* stop on the basis of a tip

that lacked "any predictive elements that the police could use to test the tipster's reliability[,]" but was based on the tipster's "firsthand observation of readily visible activity"); *Shekleton v. Eichenberger*, 677 F.3d 361, 366 (8th Cir. 2012) ("When determining whether an action was a clearly established constitutional violation, we look to the state of the law at the time of the incident.").

Officers Baggett and Marsh are also entitled to qualified immunity on Ms. Rudd's Fourth Amendment "negligent search" claim. Officers Baggett and March raise the defense of qualified immunity in their initial motion for summary judgment (Dkt. No. 43, at 11-20). The manner in which a search is conducted can determine whether a search was unreasonable for the purposes of the Fourth Amendment. *See Hummel-Jones v. Strope*, 25 F.3d 647, 650 (8th Cir. 1994) ("The 'when' and 'how' of otherwise legitimate law enforcement actions may always render such actions unreasonable."); *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (recognizing that searches that would otherwise be valid violate the Fourth Amendment when they are conducted using excessive force). However, Ms. Rudd does not identify, and the Court is not aware of, any authority establishing that a negligent or insufficient search conducted by an officer violates a suspect's Fourth Amendment rights. While courts have found that the Fourth Amendment was violated in cases where excessive force was used or the manner of the search resulted in the wanton destruction of property, there is no authority known to the Court supporting Ms. Rudd's "negligent search" theory. The Court determines that, on the undisputed record facts and based on the Court's review of controlling authorities, Officers Baggett and Marsh did not violate Mr. Carter's constitutional rights under the Fourth Amendment as alleged by Ms. Rudd. Even if they did, such a violation was not clearly established prior to the events giving rise to this suit. Accordingly, Officers Baggett and Marsh are entitled to qualified immunity. Because this

Court concludes that Officers Baggett and Marsh did not violate Mr. Carter's constitutional rights under the Fourth Amendment, the Court must find that the City of Jonesboro and Chief Yates are not liable for failure to train based on Ms. Rudd's Fourth Amendment claims. *Carpenter v. Gage*, 686 F.3d 644, 651 (8th Cir. 2012).

So ordered this 1st day of March, 2017.

*Kristine G. Baker*
Kristine G. Baker
United States District Judge